**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD JOHN RANGE,          )
                                    )
        Plaintiff,             )
                                    )
          v.               )         Civil Action No. 08-146 Erie
                                    )
MICHAEL J. ASTRUE,          )
Commissioner of Social Security,    )
                                    )
        Defendant.      )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff, Richard John Range, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff protectively filed an application for SSI on December 11, 2003, alleging disability since June 1, 1991 due diabetes, mental illness and depression (Administrative Record, hereinafter "AR", at 57-59; 67).[1] His application was denied initially, and he requested a hearing before an administrative law judge ("ALJ") (AR 40-44). A hearing was held on December 14, 2005 and on February 14, 2006, the ALJ found that Plaintiff was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 18-26). Plaintiff's request for review by the Appeals Council was denied (AR 4-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, the Defendant's motion will be granted and the Plaintiff's motion will be denied.

### I. BACKGROUND

Plaintiff was born on November 29, 1967 and was 38 years old on the date of the ALJ's

---

[1]Plaintiff previously filed an application for SSI on August 26, 2002 (AR 18). That application was denied on December 16, 2002, and no further appeals were taken (AR 18). Plaintiff also filed a third application for SSI and was awarded benefits in October 2006 (228-231).

decision (AR 57).  He has a GED and previously worked part-time as a maintenance worker in a convenience store (AR 25; 68).

Plaintiff's medical records reveal that on January 24, 2003, Annette Jadus, M.A., from Action Review Group, Inc., prepared a "Vocational Report" opining that the Plaintiff was "presently" unable to perform any substantial gainful activity due to his severe mental impairment (AR 99-104).  Her opinion was based upon Dr. Ronald Refice's review of the medical records for the period from October 21, 1993 to November 6, 2002 (AR 99-100).

Plaintiff was admitted to the hospital for five days on April 15, 2003 with a diagnosis of diabetic ketoacidosis (AR 105-110).  He underwent aggressive intravenous therapy with interval dosing of insulin and his condition improved on a daily basis (AR 105-107).  He was discharged in stable condition with instructions to follow up with his primary care physician (AR 105).

On October 20, 2003, Plaintiff underwent a psychiatric evaluation performed by Helen Kohn, M.D. at Stairways Behavioral Health Outpatient Clinic (AR 199-2002).  Plaintiff complained of depression and being "quick to anger" (AR 199).  He stated that he lived with his girlfriend who had cerebal palsy and was unable to do things for herself (AR 199).  He frequently became verbally angry with her when she requested assistance, yelling and throwing things (AR 199).  He requested medication management and individual therapy in order to control his temper and decrease his depression (AR 199).  Plaintiff stated he was on insulin because he was an insulin-dependent diabetic but was on no other medications (AR 199).  Historically, he had been prescribed Effexor and Remeron which had been effective in controlling his symptoms (AR 199).  He reported a past history of inpatient treatment for depression in 1993 and treatment by Dr. Evans in 2001-2002 (AR 199).  He informed Dr. Kohn that he recognized he needed medication to control his symptoms (AR 199).  Dr. Kohn reported that he had a good relationship with his mother and brothers with no history of abuse (AR 200).

Plaintiff reported that he had been placed in several different foster homes when he was younger and had spent time at the Harborcreek Home for Boys (AR 200).  Plaintiff further reported a previous incarceration for armed robbery in 1994 but that he was no longer on probation (AR 200).  Dr. Kohn noted that he had obtained a GED and had a "good" part-time employment history working for a convenience store until the position was eliminated (AR 200).

On mental status examination, Dr. Kohn reported that Plaintiff was cooperative and alert throughout the interview and was forthcoming about his history and problems (AR 201).  She found his eye contact was good, he showed no unusual mannerisms, his speech was normal, his thought processes were organized and relevant, there was no evidence of thought blocking, flight of ideas or obsessive thinking, and his affect was appropriate throughout the evaluation (AR 201).  Dr. Kohn further found that his cognitive and memory functions were average, he had no delusions or hallucinations, and he was not suicidal or paranoid (AR 201).  She diagnosed him with major depressive disorder, recurring, moderate, and a possible intermittent explosive disorder, and assigned him a Global Assessment of Functioning ("GAF") score of "probably about" 55 (AR 130).[2]  She placed him on a "fairly low dose" of Effexor and Remeron, and recommended individual counseling and that he attend the anger management group (AR 201-202).

Plaintiff returned to the emergency room on December 12, 2003 complaining of low blood sugar (AR 133).  He was treated with oral glucose and his symptoms improved (AR 133-134).  He was diagnosed with acute hypoglycemic reaction and was discharged in stable condition (AR 134).

On January 4, 2004, Plaintiff presented to the emergency room complaining of back pain (AR 119).  Plaintiff apparently had been seen for the same complaint the previous evening but did not recall that visit (AR 116).  He was unable to provide a history and it was noted that he was a resident of the Stairways facility (AR 119).  Behavioral Health was consulted, but the Plaintiff refused any psychiatric care (AR 119).  On physical examination, Plaintiff had some focal tenderness to the thoracic spine with some mild paraspinous muscle spasm on the right thoracic region (AR 119).  A thoracic spine x-ray revealed compression fractures of the T6 and T7 vertebras (AR 131).  Plaintiff was diagnosed with acute back pain of undetermined etiology,

---

[2]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.  It represents "the clinician's judgment of the individual's overall level of functioning." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).  Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id*.

acute thought disorder and diabetes (AR 118).  He was discharged with instructions to rest and ice his back and was prescribed pain medication (AR 120).

Plaintiff was treated in the emergency room for another episode of diabetic ketoacidosis, as well as complaints of back pain, on January 6, 2004 (AR 135-136).  Physical examination revealed 5/5 strength in his upper and lower extremities, deep tendon reflexes were normal and his sensation was intact (AR 143).  Some point tenderness was noted around his mid thoracic spine (AR 143).  An MRI of his thoracic spine showed likely recent compression fractures of the T6 and T7 vertebras and minimal endplate changes of the T4, T5, T8 and T9 vertebras (AR 146).  Conservative treatment with a back brace was recommended and he was discharged in stable condition (AR 135; 143).  An x-ray of the Plaintiff's spine taken on February 12, 2004 revealed no significant changes from the previous studies (AR 161).

Progress notes from Stairways dated January 21, 2004 indicated that the Plaintiff was wearing a back brace but could not recall injuring himself (AR 162).  It was noted that he appeared disheveled, his affect was sluggish and his mood was dysphoric, but he had no suicidal or homicidal ideations or symptoms of psychosis (AR 162-163).

Plaintiff completed a Daily Activities Questionnaire on January 26, 2004 and reported that he lived alone and was able to take care of his personal needs, although occasionally he needed a reminder to take care of his personal hygiene (AR 74-77).  He claimed he was not allowed to engage in any heavy lifting, but could lift 10 to 15 pounds (AR 74; 76).  He could only sit for 15 to 20 minutes due to back pain and walk up to three blocks due to leg pain (AR 76).  He indicated that he suffered from back pain on a daily basis and took pain medication as needed (AR 82).  Plaintiff reported that he was able to get along with family and friends, people in authority and supervisors and coworkers, although he did not respond well to criticism (AR 78; 81).  He reported that he sometimes engaged in arguments for no reason (AR 78).  He had no trouble understanding and carrying out instructions, was able to make decisions on his own, could report to work on time, could maintain good attendance and was able to keep up with his work (AR 79).

Plaintiff failed to appear at a scheduled psychological consultative examination on March 11, 2004 (AR 186).  As a result, Sharon Tarter, Ph.D., a state agency reviewing consultant, found

insufficient evidence to establish a mental impairment (AR 174).

Plaintiff was treated at the emergency room on May 6, 2004 for an episode of hypoglycemia (AR 204-206).  Plaintiff was reportedly found on the side of the road and was administered oral glucose by EMS personnel (AR 204).  Plaintiff assaulted various EMS personnel who were treating him (AR 204).  Following treatment at the emergency room he was discharged into the custody of the police in stable condition (AR 206).

Medical records from the Erie County Prison reveal that in May 2004, Plaintiff's mood and affect were eythymic and he denied suffering from any delusions, hallucinations, or suicidal/homicidal ideations (AR 214).  In July 2004 Plaintiff complained of intermittent hand and shoulder tremors, as well as low back pain (AR 212).  His blood sugar was fairly well controlled, he was neurologically intact but hand tremors were noted upon extension (AR 212).

On November 4, 2004, Plaintiff reported to the nurse practitioner at Stairways that he had been discharged the previous day from the Erie County Prison and was currently homeless and staying at Community of Caring (AR 197).  Uncontrolled hand movements were observed and he was urged to follow up with his primary care physician for evaluation (AR 197).

On December 7, 2004, Plaintiff reported that he was still staying at Community of Caring but wanted his own place (AR 197).  On mental status examination, Dr. Kohn reported that his affect was appropriate, his mood was fair, he had no suicidal or homicidal ideations and had no symptoms of psychosis (AR 196-197).  Dr. Kohn continued his medication regimen (AR 196).

Plaintiff's condition remained stable when seen by Dr. Kohn on March 11, 2005 although she increased the dosage of his medications (AR 196).

Plaintiff was seen by R. Anthony Snow, M.D., at Community Health Net on March 29, 2005 (AR 191).  Plaintiff reported a history of hypertension and diabetes stated that he was compliant with his medications (AR191).  He reported that he lived in a shelter and it was difficult to control his diet and check his blood sugar regularly (AR 191).  Plaintiff further reported a history of hand tremors that had become increasingly worse and he requested an evaluation due to a history of Parkinson's in his family (AR 191).  Dr. Snow continued his current medications, ordered blood work and anticipated a neurological referral (AR 191).

When seen by Dr. Snow on May 18, 2005, Plaintiff reported high blood sugar readings

and expressed a continuing concern about his hand tremors (AR 190).  Plaintiff's blood work looked "pretty good" and his physical examination was unremarkable, but some tremulousness was noted by Dr. Snow (AR 190).  He increased his insulin dosage and referred him to a neurologist for evaluation of his tremors (AR 190).

Plaintiff returned to Stairways on October 12, 2005 and reported that he had discontinued his medications (AR 196).  He further reported symptoms of depression and was worried about his tremors (AR 196).

On a Daily Activities Questionnaire dated November 8, 2005, Plaintiff reported that he was able to wash dishes, cook his own meals, take care of his personal needs and use public transportation without assistance and handle his own money (AR 96-98).  He indicated that watched television approximately four hours per day and read the newspaper, and visited with family once or twice a year (AR 97-98).

Plaintiff and Fred Monaco, a vocational expert, testified at the hearing held by the ALJ on December 14, 2005 (AR 372-388).  Plaintiff testified that he lived with (AR 381).  He indicated that he had never worked full-time, but had worked part-time until he was laid off in April 1993 (AR 375-376).  Plaintiff claimed he had not worked full-time for previous years due to depression, diabetes and back pain (AR 376).  Plaintiff acknowledged, however, that he was incarcerated from January 1994 to January 1999 and from May 2004 to November 2004 (AR 378).

Plaintiff testified that he "sometimes" experienced back pain but took no pain medication (AR 377; 382).  Although he had been hospitalized on three occasions for high blood sugar, he admitted that he "very rarely" monitored his blood sugar levels (AR 377).  He testified that he had difficulty controlling the movements of his hands and was scheduled to see a neurologist in several months (AR 382).  Plaintiff stated that he suffered from depression and would isolate himself about once a month (AR 383-384).  He testified that the medication prescribed by Dr. Kohn was helpful and caused no side effects (AR 382-383).  He did not have a driver's license, but was able to take public transportation (AR 384).  He occasionally went grocery shopping and had no problems sleeping (AR 385).

The ALJ asked the vocational expert to assume an individual of the same age, education

and work experience as Plaintiff, who was able to perform work light work lifting up to 20

pounds occasionally, but was limited to simple, repetitive tasks that would not involve dealing

with the general public or close interaction with coworkers, who would need to avoid exposure to

heights or hazardous machinery and would have difficulty with tasks involving fine motor

movement (AR 387). The vocational expert testified that such an individual could perform the

light jobs of unarmed guard, document preparer and hand packer (AR 387).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was

not eligible for SSI benefits within the meaning of the Social Security Act (AR 18-26). His

request for review by the Appeals Council was denied, rendering the ALJ's decision the final

decision of the Commissioner (AR 4-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported

by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or

considerable amount of evidence, but only "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988)

(quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v.*

*Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence

but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the*

*United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable

to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step evaluation process to determine when an individual meets

this definition:

> In the first two steps, the claimant must establish (1) that he is not
> engaged in "substantial gainful activity" and (2) that he suffers
> from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S.
> 137, 140-41 (1987). If the claimant shows a severe medical
> impairment, the [Commissioner] determines (3) whether the
> impairment is equivalent to an impairment listed by the

> [Commissioner] as creating a presumption of disability. *Bowen,*
> 482 U.S. at 141.  If it is not, the claimant bears the burden of
> showing (4) that the impairment prevents him from performing the
> work that he has performed in the past.  *Id.*  If the claimant satisfies
> this burden, the [Commissioner] must grant the claimant benefits
> unless the [Commissioner] can demonstrate (5) that there are jobs
> in the national economy that the claimant can perform.  *Ferguson
> v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.  The ALJ resolved Plaintiff's case at the fifth step.  At step two, the

ALJ determined that his diabetes mellitus and major depression were severe impairments, but

determined at step three that he did not meet a listing (AR 20-23).  At step four, the ALJ

determined that he retained the residual functional capacity to perform light work lifting up to 20

pounds occasionally, but was limited to simple, repetitive tasks that would not involve dealing

with the general public or close interaction with coworkers, or involve exposure to heights or

hazardous machinery, and his ability to perform fine motor manipulation with his hands was poor

(AR 23).  At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the

vocational expert at the administrative hearing (AR 25-26).  The ALJ additionally determined

that his statements concerning the intensity, duration and limiting effects of his symptoms were

not entirely credible (AR 24).  Again, I must affirm this determination unless it is not supported

by substantial evidence.  *See* 42 U.S.C. § 405(g).

    In support of his claim, Plaintiff relies extensively on evidence that was submitted to the

Appeals Council, as well as additional evidence attached to his Motion for Summary Judgment.

The evidence presented to the Appeals Council included approximately 141 pages of medical and

other evidence spanning the time period between October 14, 1993 through October 25, 2006.

This evidence includes: correspondence from the Social Security Administration dated October

12, 2006 and October 25, 2006 awarding Plaintiff benefits (AR 228-231); an Affidavit of

Incompetency form completed by Sean Su, M.D. on October 25, 2006 (AR 232); a Psychological

Disability Evaluation report signed by Glenn Thompson, Ph.D. dated August 25, 2006 (AR 233-

243); a June 13, 2006 Internal Medical Examination report authored by John Kalata, D.O. (AR

244-248); a Welfare Employability Assessment Form and Health Sustaining Medication Form

completed by Paul Kohut, M.D. dated June 6, 2006 (AR 249-252); Community Health Net

progress notes dated from December 30, 1999 through April 30, 2002 (AR 253-283); Plaza 18

Medical Center records dated January 25, 2002 (AR 284-287); a Disability Report form completed by M. Vega dated August 26, 2002 (AR 288-290); a Psychiatric Evaluation report authored by Dr. Booker Evans dated October 16, 2001 (AR 291-293); Metro Health Center Emergency Room records dated November 21, 2001 and April 27, 2001 (AR 294-305); a Psychiatric Evaluation report authored by Kripa Singh, M.D. dated April 25, 2001 (AR 306-311); Hamot Medical Center records dated September 20, 2000, October 2, 1999, October 21, 1993 and December 14, 1993 (AR 312-324); various Daily Living Questionnaire's completed by the Plaintiff dated September 20, 2006, October 30, 2006, December 31, 2001 and October 2, 2002 (AR324-357); and pages copied from DSM IV Handbook of Mental Disorders (AR 358-369). This evidence was not considered by the ALJ, but was considered by the Appeals Council however, which denied review (AR 4-8).

Plaintiff has also attached to his Motion for Summary Judgment evidence that does not appear to have been considered by the Appeals Council and was not made a part of the record below.  This evidence includes the Plaintiff's school records, psychological reports and intelligence testing reports, dated from October 17, 1974 through June 21, 1994; a psychological evaluation conducted by Sean Su, M.D. dated June 5, 2008; and notarized statements of Calvin L. Miller and Luella A. Clayton, dated April 21, 2009.  *See* Plaintiff's Motion, Exs. 1-8 [Doc. No. 18].

When a claimant seeks to rely on evidence that was not before the ALJ, the district court may not supplement the record but may remand the case to the Commissioner if "the evidence is new and material and if there was good cause why it was not presented to the ALJ." *Matthews v. Apfel*, 239 F.3d 589, 593 (3rd Cir. 2001).  In *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3rd Cir. 1984), the Third Circuit set forth the requirements for a new evidence remand:

> [a]s amended in 1908, § 405(g) now requires that to support a "new evidence" remand, the evidence must first be "new" and not merely cumulative of what is already in the record.  Second, the evidence must be "material;" it must be relevant and probative. Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination.  An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.  Finally,

9

> the claimant must demonstrate good cause for not having
> incorporated the new evidence into the administrative record.

*Szubak*, 745 F.2d at 833 (internal citations omitted).

Plaintiff has filed several applications for benefits in this case and therefore the relevant time period reviewed by the ALJ and for this appeal is December 17, 2002, the date following the ALJ's denial of his previous application for benefits, to February 14, 2006, the date of the ALJ's decision. With respect to any records dated between December 17, 2002 and February 14, 2006, these are not "new" since they were in existence or available to the Plaintiff at the time of the administrative proceeding. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding. ..."); *Fraser v. Astrue*, 2009 WL 948341 at *2 (E.D.Pa. 2009) (holding that letter from claimant's treating physician was not "new" since letter could have been provided prior to the hearing before the ALJ); *Pierce v. Comm'r of Soc. Sec.*, 2009 WL 2602186 at *7 n.6 (D.N.J. 2009) (finding 1982/1983 medical records were not "new" since they would have been in existence and available to the plaintiff at the time of the March 2006 administrative hearing). Moreover, these records are not material since they do not relate to the time period for which benefits were denied and thus could not have changed the ALJ's decision. *Szubak*, 745 F.2d at 833. Finally, Plaintiff has failed to demonstrate good cause for not presenting this evidence to the ALJ for consideration. *Matthews*, 239 F.3d at 593.

With respect to the evidence which post-dates the ALJ's decision of February 14, 2006, these records are also immaterial since they do not relate to the time period for which benefits were denied. *See e.g., Anderson v. Comm'r of Soc. Sec.*, 2008 WL 619209 at *12 (D.N.J. 2008) (claimant not entitled to remand where records were dated after the ALJ's decision); *Wilson v. Halter*, 2001 WL 410542 (E.D.Pa. 2001) (medical reports relating to period of time after that addressed in the hearing are immaterial to the ALJ's decision and therefore do not warrant remand), *aff'd in an unpublished opinion*, 27 Fed. Appx. 136 (3rd Cir. 2002); *Ordo v. Apfel*, 2001 WL 1159856 (E.D.Pa. 2001) (remand not appropriate since new evidence did not relate back to time period for which benefits were denied), *aff'd without opinion*, 48 Fed. Appx. 41 (3rd Cir. 2002). For the foregoing reasons, the Plaintiff's request for a remand is denied. I now direct my attention to the Plaintiff's arguments relative to the evidence that was before the ALJ.

Plaintiff first argues that the ALJ erred at the third stage of the sequential evaluation process by determining that his mental impairments did not meet or medically equal the listed impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See Plaintiff's Brief* p. 2. This provision contains a list of various impairments that the Commissioner has determined prevent a person from performing any work. 20 C.F.R. §§ 404.1525, 416.925. A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary. *Burnett v. Commissioner*, 220 F.3d 112, 119 (3rd Cir. 2000). A claimant bears the burden of proving that his impairments meet or equal a listed impairment. *See Adorno v. Shalala,* 40 F.3d 43, 46 (3rd Cir. 1994).

The ALJ focused on Listing 12.04, Affective Disorders. The Plaintiff argues that he meets Listing 12.06, Anxiety Related Disorders and Listing 12.08, Personality Disorders. All three of these Listings consist of paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04; 12.06; 12.08. In each Listing, paragraph B criteria requires at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence or pace; or

    4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B); 12.06(B); 12.08(B). The term "marked" means "more than moderate but less than extreme," and a "marked limitation" is one that seriously interferes with a claimant's ability to "function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00C.

In addition to paragraph A and paragraph B criteria, Listing 12.04 and Listing 12.06 contain paragraph C criteria (a set of additional functional limitations). 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(C); 12.06(C). The paragraph C criteria for Listing 12.04 includes:

    C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms of

signs currently attenuated by medication or psychosocial support,
and one of the following:

1.  Repeated episodes of decompensation, each of extended
duration; or

2.  A residual disease process that has resulted in such marginal
adjustment that even a minimal increase in mental demands or
change in the environment would be predicted to cause the
individual to decompensate; or

3.  Current history of 1 or more years' inability to function outside
a highly supportive living arrangement, with an indication of
continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1§ 12.04(C).  The paragraph C criteria for Listing 12.06

requires a "complete inability to function independently outside the area of one's home."  20

C.F.R. Pt. 404, Subpt. P, App. 1§ 12.06(C).

To meet the requirements of Listings 12.04, Affective Disorders, and 12.06, Anxiety

Related Disorders, a claimant must show that he met the requirements of paragraph A and the

requirements of paragraph B or C, and to meet the requirements of Listing 12.08, Personality

Disorders, a claimant must show that he met the requirements of paragraphs A and B.  20 C.F.R.

Pt. 404, Subpt. P, App. 1§§ 12.04; 12.06; 12.08.  The ALJ found that the Plaintiff's depression

satisfied the A criteria for Listing 12.04, but that he failed to meet the B or C criteria (AR 21;

23).  Although the ALJ did not specifically address Listings 12.06 or 12.08, because the

paragraph B criteria are identical for each Listing, any findings made in connection with Listing

12.04(B) apply with equal force to Listings 12.06(B) and 12.08(B).

Here, the ALJ found that the Plaintiff's affective disorder did not meet part B because the

evidence reflected only mild limitations of activities of daily living, moderate difficulties in

maintaining social functioning, mild limitations in maintaining concentration, persistence or

pace, and there had never been an episode of decompensation (AR 22-23).  All of these findings

are supported by substantial evidence.  As noted by the ALJ, Plaintiff acknowledged he was able

to care for his personal needs without assistance, prepare his meals and handle his limited

finances (AR 22; 74-77).  He went grocery shopping, visited with family and took public

transportation (AR 75; 78; 83; 96; 98).  With respect to his ability to maintain social functioning,

the ALJ noted that the Plaintiff had lived with friends since April 2005, and except for an assault

on an EMS paramedic, there was no other evidence of any recent altercations (AR 22). The ALJ acknowledged that he did not like to be in confined spaces containing a lot of people, but that he had a basic ability to deal appropriately with persons such as store clerks (AR 22). In addition, I note that Dr. Kohn found that he had a good relationship with his family and he was cooperative throughout his evaluation (AR 200-201).

Regarding the Plaintiff's concentration, persistence or pace abilities, the Plaintiff reported that he had no difficulty in understanding and carrying out instructions and he was able to keep up with his work, and the ALJ noted that he read a newspaper two to four hours out of the week and Dr. Kohn's evaluation did not indicate any gross impairment in this domain (AR 22; 79). Dr. Kohn found his eye contact was good, he showed no unusual mannerisms, his speech was normal, his thought processes were organized and relevant, there was no evidence of thought blocking, flight of ideas or obsessive thinking and his cognitive and memory functions were average (AR 201).

Finally, there was no evidence of any episodes of decompensation of an extended duration, and no treating or examining physician found that his mental impairments met or equaled the Listings' criteria during the relevant time period. In support of his argument that he met the criteria for Listings 12.04 and 12.08, Plaintiff points to an "evaluation" by Dr. Refice dated January 17, 2003. *See* Plaintiff's Brief p. 3. However, Dr. Refice's evaluation is not part of the Administrative Record and was simply referenced in a Vocational Report prepared by Ms. Jadus dated January 24, 2003, wherein Ms. Jadus noted that Dr. Refice had examined certain medical evidence of record from October 21, 1993 through November 6, 2002 and concluded that the Plaintiff retained no residual functional capacity (AR 99-103). Not only was Dr. Refice's report not included in the Administrative Record, but more importantly, his opinions were based upon his review of medical evidence outside the relevant time period. Therefore, Dr. Refice's report, as well as Ms. Jadus' recitation of his findings, lends no support to the Plaintiff's argument the he met certain Listings.

The ALJ further found that the Plaintiff's mental impairments did not meet the C criteria of Listing 12.04 (AR 23). Specifically, the ALJ found that although he had symptoms of depression for more than two years, this impairment posed no more than minimal limitations on

13

him, and that there was no evidence in the record to support a conclusion that the remaining sub-elements of paragraph C criteria were met (AR 23). I find that the ALJ's conclusion in this regard is supported by substantial evidence. Moreover, Plaintiff has failed to point to any relevant evidence demonstrating that he was unable to function independently outside his home.

Plaintiff next argues that his compression fractures of the spine "warrants a finding of disability under SSA 1.05 subsection B part 2." *See* Plaintiff's Brief p. 4. Although Plaintiff refers to Listing 1.05, this section relates to amputations; therefore, I shall examine Listing 1.04, which addresses disorders of the spine. While the ALJ did not specifically cite to Listing 1.04, the ALJ implicitly found that the evidence failed to satisfy the criteria of that Listing by virtue of the fact he found that this impairment was non-severe (AR 21). Listing 1.04 requires:

> Disorders of the spine (e.g., herniated nucleus pulposis, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root ... or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting or supine);
>
> or
>
> B. Spinal arachnoiditis ...
>
> or
>
> C. Lumbar spinal stenosis ... .

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04.

Plaintiff appears to argue that his compressions fractures, coupled with wearing a back brace, satisfies the above Listing. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original); *see also Williams v. Sullivan,* 970 F.2d 1178, 1186 (3rd Cir. 1992). Therefore, even though the Plaintiff may have compression fractures, the record is devoid of any

evidence demonstrating that the remaining criteria of Listing 1.04 were met.  For example, there is no evidence that Plaintiff suffered any motor loss accompanied by sensory or reflex loss, or evidence of a positive straight-leg raising test.  Indeed, the record reflects the opposite.  On January 6, 2004, his physical examination revealed 5/5 strength in his upper and lower extremities, deep tendon reflexes were normal and his sensation was intact (AR 143).  Moreover, as the ALJ noted, Plaintiff testified he only experienced intermittent back pain and took no pain medication (AR 21).  Accordingly, I find no error in this regard.

Finally, the Plaintiff points to his hand tremors in support of his claim for benefits.  The ALJ fully recognized these tremors were observed by various treating sources, including the prison physician and Dr. Kohn (AR 21).  The ALJ noted however, that the prison physician found he was able to use his hands despite the tremors (AR 21).  The ALJ observed that the Plaintiff related that he had experienced the tremors for the past five or six years, and thus would have had them while he was gainfully employed at the convenience store (AR 21).  He concluded that this was a non-severe impairment, since it caused no more than minimal limitations in his functional ability (AR 21).  Because it was noticeable in his handwriting, however, the ALJ accommodated this condition by limiting him to light work allowing for poor fine motor manipulation (AR 21; 23).  The ALJ's findings in this regard are supported by substantial evidence.  There is no indication in the record that during the relevant time period this condition posed any limitations in the Plaintiff's ability to perform work-related activities other than those found by the ALJ.

## IV. CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RICHARD JOHN RANGE,              )
                                 )
            Plaintiff,            )
                                 )
            v.                   )          Civil Action No. 08-146 Erie
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
            Defendant.           )
                                 **ORDER**

AND NOW, this 21st day of October, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 18] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 21] is GRANTED.  JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Richard John Range.  The clerk is directed to mark the case closed.

                                        s/ Sean J. McLaughlin
                                        United States District Judge

cm: All parties of record.

16